LILLIAN S. BURNETT et al. v. W. J. KENDRICK.

Eastern Section. October 31, 1925.

Petition for Certiorari denied March 6, 1926.

1. **Contracts. The intent to make time the essence of a contract must be clearly and unmistakably shown.**
   In an action for specific performance of a contract to exchange real estate where the contract provided thirty days for the parties to examine the titles and pass the deeds, held this time was not the essence of the contract and the contract could not be avoided because the plaintiff did not pay off liens on his property within that time.

2. **Contracts. Specific performance may be decreed where stipulations as to time are not literally observed.**
   In equity, time is not ordinarily regarded as of the essence of a contract, and, therefore, specific performance may be decreed in cases where justice requires it, even though literal terms of stipulation as to time have not been observed.

3. **Contracts. Liens for a stated sum which can be paid off are not such defects of title as to avoid contract.**
   In an action for specific performance of a contract to exchange real estate where the contract provided the contract should be of no force and effect if defects of title should be discovered which could not be removed except by court proceedings, held that liens which could be paid off were not such defects as contemplated to avoid the contract.

4. **Contracts. Specific performance. Evidence held to justify specific performance.**

   In an action for specific performance of a contract to exchange real estate evidence held to justify decree of specific performance of the contract.

Appeal from Chancery Court, Sullivan County; Hon. Hal H. Haynes, Chancellor.

Affirmed and remanded.

Burrow and Burrow, and John F. Blevins, all of Bristol, for appellant.

E. K. Bachman and J. K. Brown, of Bristol, for appellee.

OWEN, J. The defendant has appealed from a decree rendered in the chancery court of Sullivan county at Bristol, wherein complainants' bill was sustained, and defendant was ordered by decree of the court to specifically perform a certain contract. Said contract is as follows:

This contract of sale and exchange between Lillian S. Burnett and W. R. Burnett, her husband, parties of the first part and W. J. Kendrick, party of the second part:

## WITNESSETH:

That the said first parties are the owners of an apartment house in Kingsport, Tennessee, at the corner of Charlemont and Broad street, and the said second party is the owner of a farm, known as the Butler farm, located in the 21st Civil District of Sullivan county, Tennessee, and containing 237 and 5/10th acres be the same more or less, it being the same tract of land conveyed to the said W. J. Kendrick by Carrie V. Wright and her husband, by deed of date April 19, 1918, and recorded in deed book 28, page 280, in the Register's Office at Bristol, Tennessee. And whereas, the said parties desire to exchange said properties but before doing so, so far as conveying the same by title they desire to bind themselves and give thirty days each to the other to examine title to the respective properties. Therefore, it is agreed and understood that the said second party shall pay the said first parties thirty-five hundred ($3500) dollars difference in the two properties.

Said thirty-five hundred ($3500) dollars to be paid on or before January 1, 1925, and shall bear interest from this day, said interest to be paid semi-annually.

There is an existing mortgage for fifty-five hundred ($5500) dollars on the property of the parties of the first part, which is due Jan. 1, 1925, and if it can be more conveniently done then the party of the second part is to assume the payment of $3500 of said mortgage, and the balance of said mortgage of $2000 the said second party may retain a vendor's lien on the farm to the extent of $2000 to make sure

the payment by the parties of the first part the balance of said mortgage as herein set out.

It is further understood that should there be vendor's lien, other mortgages other than the amount inumerated on the property of the parties of the first part, then it is understood the party of the second part, in order to save himself harmless and to make sure the final payment of all incumbrances against the property of the parties of the first, shall retain a vendor's lien on the farm herein sold so as to protect him against loss of any character.

It is further understood that the parties of the first part are to pay the taxes for the year 1923 upon the farm, and the party of the second part is to pay the taxes against the Kingsport property for the year 1923. It is further understood that the said second party is to pay all street and sidewalk assessments, etc., against said Kingsport property from time to time as the same may become due. All taxes and street assessments prior to Jan. 1, 1923, now due against the Kingsport property shall be paid by the parties of the first part.

Said parties of the first and second part are to warrant by proper convenance title to their respective properties.

It is further understood that should any defects of title be discovered in either of the properties which can not be removed except by court proceedings then unless the other party should desire it, this contract of sale shall be of no further force or effect.

It is further agreed that possession shall be given at once (by June 1, 1923) and each shall be entitled to the rents, etc., from said date.

It is further understood that George Webb shall hold the portion of the farm that he has under his contract, but possession thereto is guaranteed by November 15, 1923.

WITNESS our hands and seals this the 29th day of May, 1923.

It is further understood that said party of the second part likewise conveys all farming equipment, etc., and other personal property including lumber, etc. It is further understood that all furniture, etc., belonging to the parties of the first part in said apartment house shall be transferred to the said second party, except one Piano and China Press.

It is further understood that the said second party guarantees as much as two hundred and thirty-seven acres of land, and if short the difference is to be paid upon the basis of $20,000 for the entire farm. There has been a small transaction between the second party and Geo. T. Webb and wife, in which they have exchanged certain properties, and this contract is made subject to this transaction. It is further understood that the party of the second part transfers all his rights and appurtenances carrying right-of-way, water

rights, etc., and he guarantees that he has certain water rights that are described in his deed which has been heretofore designated.

WITNESS our hands and seals this the 29th day of May, 1923.

Lilliam S. Burnett (SEAL)

W. R. Burnett (SEAL)

W. J. Kendrick (SEAL)

Said contract was duly acknowledged on the 29th day of May, 1923, and recorded in the register's office of Sullivan county on May 30, 1923, at 9 a. m. The complainants consist of Lillian S. Burnett and her husband, W. R. Burnett.

It appears that soon after the execution of this contract the complainants went into possession of the farm they were to receive from Kendrick, and Kendrick took possession of the apartment house in Kingsport which the complainants were to convey to him. About the time the thirty days were up wherein each party had to examine title to their respective purchases the defendant informed complainants that he had discovered certain liens upon the Kingsport apartment house. Complainants insisted that they made arrangements through a bank at Bristol to borrow a sufficient amount of money to liquidate all liens, less the amount the defendant was to pay as a difference between the exchange of the two properties sought to be exchanged by the terms of the contract.

It appears that the contract which we are quoting in this opinion was drafted by defendant's attorney and at defendant's dictation. Complainants insist that the defendant gave them until 11 p. m. on the 30th day after the contract was executed to raise the necessary amount of money to pay off and discharge the liens on said Kingsport property, and after they made their arrangements with the bank the defendant could not be found. The next day after these negotiations the defendant served notice on the complainants that he would not execute a deed to the farm and all negotiations were off, and defendant proceeded to take charge of the farm, by putting locks on the gates and attempting to dispossess complainants' tenants.

A number of depositions were taken and numerous exhibits filed, and on the entire record the chancellor decreed as follows:

DECREE.

Lillian S. Burnett, et al.  ⎫

      v.           ⎬

W. J. Kendrick.       ⎭

                 CHANCERY COURT, BRISTOL.

## DECREE.

This cause was heard on a former day, before Chancellor Haynes, on the record at large. The case, by consent, was heard as if in term time, and on this July 30, 1924, after consideration thereof, together with argument and briefs of counsel, the court is of opinion and doth order, adjudge and decree:

(1) On the hearing, complainant was allowed to amend the bill as follows:

"In the second paragraph of Section VI thereof, so as to allege that 'there existed at the time of said contract's execution, in the neighborhood of $11,450 of said encumbrances, said amount including all mortgages, deeds of trust, vendor's liens and tax liens, but there was no judgment liens in existence against said property at the time of the execution of said contract,' to replace the sentence of said paragraph which recites $13,450 of encumbrances, including 'judgment liens.'"

(2) The thirty days, provided for in contract involved, was not of the essence of the contract, so as to operate to forfeit any rights of either party, as defendants insists. It was not an option as claimed, but only a stipulation for time to examine titles before going so far with the exchange, as to execute deeds. The parties were, nevertheless, bound by the contract, to consummate the exchange, save only upon the condition that a defect, or defect of title, should be found, to correct, or remove which, a court proceeding would be necessary.

During the thirty days, either party discovering such defect, could refuse to go further with the exchange; and, in view of the negotiations had after the thirty days, either party, having found such a defect, during such extended time, could, in like manner, have refused. Neither party could demand a deed, until the expiration of said time.

(3) But no such defect, or encumbrance, as was contemplated by the contract, was found. Manifestly, a lien, or a court deed, subject to be lifted upon the payment of purchase money, nor any kind of claim, or encumbrance, dischargable by the mere payment of an amount of money already determined, could not have been within the contemplation of the parties, as the court proceeding referred to. It, at the least, required something to be done to clear the title which called for the institution of suit.

(4) Defendant relies only upon the defense that because of the liens and defects found, and because, as he insists, complainants were not in position to perform the contract, within the thirty days, he, the defendant, is not bound. There is no defense set up, based upon fraud, to enable the defendant to escape the language and

necessary meaning of the contract executed, in respect of other mortgage, or lien encumbrances, against which the contract purports to protect defendant, by allowing him to retain a vendor's lien on the farm he was exchanging, for complainants' property. It might be possible, if the facts showed deceit and fraud, or, even if the aggregate amount of liens and mortgage, not specifically mentioned, in the absence of intentional deception, should be so great as to operate as a fraud, that defendant could escape his contract, without such plea of fraud. But it is deemed unnecessary to decide that question, for the reason that the weight of the evidence, in the view of this court, disproves any purpose, on the part of complainants, to deceive, or wrong defendant; and in the circumstances of the case, on the theory that the liens or encumbrances were even measurably great, defendant was protected, in such way, that they could not operate as a fraud, and complainants would, in the absence of fraud, or bad faith, be entitled to remove the encumbrances, all of them, or down to the point, which defendant must admit, the provision for his protection against liens and mortgages, was made to cover. The claim by defendant that the purpose of such clause in this contract, was only to protect him against "small encumbrances," is not borne out by the language employed in the contract, which supports the insistence of complainants with regard to what occurred. It seems probable, that other liens and the $4000 mortgage, were mentioned to Mr. Kendrick, before, if they may not have been referred to at the time, the contract was prepared.

(5) The special mention of the $5500 mortgage, does not imply that no others were discussed, since it was necessary to refer specially to it, in view of the assumption by defendant, of part of it. The contract, as written and executed, plainly provides for the retention of the vendor's lien to protect defendant, against loss, on account of such other liens and mortgages, as might exist against the property; and he cannot justly complain, in the face of such language, so long as he had ample protection by such retained lien, as he substantially admits was the case; and he cannot do so for the stronger reason, that complainants offered him, in good faith, protection, free from all reasonable doubt, by removing nearly all of said encumbrances, and they now propose to remove them entirely.

(6) It is true, that a stipulation for such protection, considering amounts possibly involved, seems un-business-like, and is unusual. But, reduced to its last analysis, it only means that defendant might have to raise money temporarily; also, assuming that the language used, might not cover loss, on account of counsel fees, he might have to pay, that was another risk to be taken. Unless in case of foreclosure of mortgage, defendant could probably, by proper ac-

tion, have come into any suit and enforced his vendor's lien, to save his own property from sale, the latter being only secondarily liable, where the rights of the creditor, were not violated. These matters he may, at the time, have not considered very serious, since, as it appears, defendant is a man of means, and was anxious to close the trade. Col. Peters states this, and says, as he recalls it, that the provision in question, was inserted at defendant's instance, or suggestion.

(7) So that, by the express terms of his contract, Mr. Kendrick having agreed to look to his vendor's lien for protection, and certainly inasmuch as that protection is admittedly ample, he cannot, in such circumstances, claim that he did not know of a lien or mortgage, and thereby avoid his contract, like he might do, if the contract carried no such provision for such possible liens and mortgages, and for his protection against them. The provision in question, must be held to have put him on notice, as to same; and in such a case, all he can claim, is the protection which he contracted for; and, in any event, he may not complain, if the protection is made perfect, by completely removing the encumbrances.

(8) It is clear enough, that defendant became less enthusiastic about his trade, and that the existence of the encumbrances, complained of, or the failure to remove them, was not the real reason for refusing to perform the contract. It was not the inconvenience or risk, in possibly having to raise money and rely upon the security of his vendor's lien, which fact is shown by defendant's failure to accept the proposition and proven arrangement of complainants, before negotiations were terminated, to pay off all but a comparatively small amount, also by his rejection of their proposition, followed up in this suit, to remove all such liens, or encumbrances, the latter including the claim against the furniture. Complainants probably thought they were selling only their interest in the furniture, and that defendant was to take it, subject to the claim against it, secured by a title retained control on part of it. But the language of the contract and the circumstances disclosed in the record, do not, as this court believes, warrant complainants, in that contention. Nevertheless, their offer now, and formerly, to pay off said claim, meets the equity of the case, as regards that part of the transaction; and it is all that defendant may insist upon, in respect of that question.

(9) Either of the propositions made by complainants,—that before this suit and pending the negotiations had, or that made in their bill in this case, was fair and reasonable, and entirely practicable; and defendant is held bound to acceptance of one or the other of them. He is, therefore, held bound to specific performance of this contract of his, and is hereby required and enjoined, to ex-

ecute, acknowledge and deliver over to the clerk and master of this court, within twenty (20) days from date of this decree, a deed to said farm, in accordance with his contract, as herein construed. He will, however, on account of said offer made in the bill and now kept up, have the privilege of accepting complainant's proposition to mortgage said farm and remove all of said encumbrances.

In the event defendant desires to accept said proposition, he will, in said deed, show all purchase money paid; and complainants will be required to remove all encumbrances shown in the record, from proceeds of any loan obtained, same to be done, simultaneously with delivery by the clerk and master of said deed for registration.

(10) And defendant having failed to perform his contract, and by such failure and refusal, put complainants in the position they now occupy, they are allowed ninety days from date said deed may be filed, in which to perfect said loan and mortgage, whereby to pay off said encumbrances, and remove the liens from the title to said property conveyed to defendant; and at the same time, the clerk and master will deliver to defendant, the deed to him, proffered in the bill, for the property he got under said contract.

(11) In case defendant files said deed, without retention of lien, the bill in this case, will stand dismissed and complainants and surety taxed with costs of the cause, if complainants shall fail, within said period of ninety days to remove said liens, as they have proposed and agreed to do.

But if defendant does not so release his lien, or in case he does not release it and complainants comply with their said offer to clear the title, the defendant is taxed with all costs of this cause, accrued to the present time.

(12) Unless, in the event said deed is so filed with release of the lien and thereafter complainants fail as aforesaid, to remove the liens, etc., the defendant Kendrick, is held liable for all damages complainants may have suffered, directly, or necessarily growing out of his failure to fulfill his contract, and in consequence of his wrongful eviction of complainants from the possession and control of said farm; such damages to be ascertained and fixed, by an order of reference, to be hereafter entered in this case. It is not now entered because of the possibility that complainants may not comply with their said proposition, into which, should they fail, it is this court's holding, that all the rights and remedies of the respective parties, pertaining to said transaction, must be deemed to be merged, and hereby settled.

HAL H. HAYNES, Chancellor.

The defendant excepted to this decree, prayed and was granted an appeal to this court, perfected the same and has assigned errors as follows:

One: In holding that the provision in the contract giving thirty days before making conveyances, in which to examine title, was not of the essence of the contract;

Two: In holding that the defendant Kendrick was bound to carry out the contract even if within the thirty days he found other encumbrances on the Kingsport property, if a court proceeding would not be necessary to remove such defect or encumbrance;

Three: It was error not to decree that Kendrick had the right to refuse the contract because the complainants were guilty of fraud, because a judgment had been taken in the circuit court at Blountville against the complainants in favor of A. J. Johnson for $1247.04 within the thirty days given by the contract for examination of titles, and which judgment constituted a lien upon complainant's property;

Four: It was error to hold that defendant Kendrick was obligated to carry out the contract notwithstanding the heavy mortgage and other liens he found to be on the Kingsport property, and, if necessary, himself to raise the money temporarily to pay off said encumbrances;

Five: The chancellor erred in decreeing a specific performance of the contract.

All of the assignments can be disposed of under the fifth assignment. The learned chancellor has set forth fully the facts in the decree. We are of the opinion that the thirty day period designated as the time within which the exchange would be consummated was not the essence of the contract. "In equity, time is not ordinarily regarded as of the essence of a contract, and, therefore, specific performance may be decreed in cases where justice requires it, even though literal terms of stipulation as to time have not been observed." (25 R. C. L., p. 256).

36 Cyc., 707: "But courts of equity make a distinction in all cases between that which is matter of substance and that which is matter of form. The principle has been firmly established from an early day in all ordinary contracts for the sale and purchase of land, that time is not, in equity, of the essence of the contract; that is to say, acts which plaintiff, by the terms of the contract, stipulated to perform on a given date, may be performed at a later date."

36 Cyc., 713: "The intent to make time of the essence must be clearly and unmistakably shown. An intention to make time essential cannot be inferred from the mere appointment of a day for the delivery of a deed or the payment of the price."

36 Cyc., 717: "The default as to time may be waived by the conduct of the other part; as, by acts recognizing the contract as subsisting, or by continuing the negotiations."

We are of the opinion that all of the liens on the Kingsport property belonging to the complainants could be removed without a legal proceeding, and it is very common in the transferring of property to find the property undertaken to be sold to be encumbered with a lien or liens, but where the seller desires to comply with his contract of sale and the purchaser desires to carry out his contract, and the parties act in good faith, these liens practically in all cases can be released and cleared, and title made perfect.

The chancellor has given the defendant two modes wherein he can carry out his contract with the complainants, and before parting with his property the defendant will receive an unincumbered piece of property from the complainants.

We are of the opinion that the defendant was looking for an excuse to avoid his contract, but he did not find a legal excuse for so doing, and the chancellor reached the equities of this cause in his decree.

We find no error in the decree of the lower court. All the assignments of error are overruled and disallowed. This cause will be remanded to the chancery court of Sullivan county, at Bristol, for the purpose of enforcing the decree for specific performance.

The defendant and his surety on appellant bond will pay all the costs of the cause, including the cost of appeal, for which execution will issue.

Heiskell and Senter, JJ., concur.